UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

AIKUT AIDARBEK UULU, Petitioner,

v. Civil Action No. 4:26-cv-116-RGJ

MIKE LEWIS, et al., Respondents.

* * * * *

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Petition for Writ of Habeas Corpus [DE 1] filed by Petitioner Aikut Aidarbek Uulu ("Uulu"). The United States as counsel for the Federal Respondents ("Respondents") responded [DE 9], and Uulu replied [DE 10]. Respondents then filed a Supplemental Response To Order To Show Cause. [DE 12]. This matter is ripe. For the reasons below, Uulu's Petition for Writ of Habeas Corpus [DE 1] is **GRANTED**.

## I. BACKGROUND

Uulu is a native and citizen of Kyrgyzstan. [DE 1 at 2]. He previously entered the United States entered the United States on June 22, 2013, on a B-2 Tourist visa. [DE 9 at 77]. USCIS issued a Notice to Appear on May 20, 2021, but Uulu departed to Kyrgyzstan "to care for his ill mother." [DE 9-1 at 84].

On December 7, 2022, Uulu presented himself at the San Ysidro Port of Entry. [*Id.*]. The United States Customs and Border Patrol Office ("USCBPO") determined Uulu was inadmissible and he was processed "for Expedited Removal with credible fear claim." [*Id.*]. Uulu was detained pending expedited removal proceedings.

On March 28, 2023, Immigrations and Customs Enforcement ("ICE) issued a Form I-261, "Additional Charges of Inadmissibility/Deportability," notifying Uulu of new charges of

inadmissibility "in lieu of those set forth in the original charging document" and stating that he was placed in removal proceedings "under section 240 of the Immigrational and Nationality Act," codified at 8 U.S.C § 1229a. [DE 9-4 at 92 (charging Uulu as inadmissible under INA § 212(a)(7)(A)(i)(I), for lacking valid travel documents)].

On April 3, 2023, "ICE ERO Released [Uulu] on interim parole with a $10,000 Bond and Alternative to Detention requirement." [DE 9-1 at 84]. Uulu remained on bond in the interior of the United States until ICE re-arrested him on February 3, 2026. [DE 1 at 2]. At the time of his arrest, Uulu had an asylum application pending before USCIS and had obtained a valid Employment Authorization Document or "EAD." [*Id.*].

Uulu is currently detained at Hopkins County Jail, in Madisonville, Kentucky. [*Id.* at 4].

## II. DISCUSSION

Uulu filed the present Petition requesting the "Court declare that any detention under 8 U.S.C. § 1225 is unlawful under the facts presented and that he is entitled to the protections of 8 U.S.C. § 1226(a), including eligibility for bond." [*Id.* at 3].

In response to the Court's Order to Show Cause [DE 5], Respondents initially agreed that Uulu was "detained under 8 U.S.C. § 1226(a)," [DE 9 at 77], but later supplemented their response and instead argued that Uulu "is detained under § 1225(b)(2) because he is an 'arriving alien,' which is a subset of 'applicant for admission.'" [DE 12 at 111]. Unlike Section 1226(a), Section 1225(b)(2) authorizes mandatory detention. *See* 8 U.S.C. § 1225(b)(2)(A).

Respondents further argue that the relief Uulu seeks is barred because his bond was determined by "Department of Homeland Security (DHS), and not an immigration judge," and 8 C.F.R. § 1003.19(h)(2)(i)(B) provides that "an immigration judge may not redetermine conditions of custody imposed by [DHS] with respect to the following classes of aliens: . . . arriving

aliens in removal proceedings, including aliens paroled after arrival pursuant to [8 U.S.C. § 1182(d)(5)] of the Act." [DE 12 at 110–112].

**A. 8 C.F.R. § 1003.19(h)(2)(i)(B) Does Not Bar Uulu's Habeas Claim**

As an initial matter, Respondents' argument that Uulu may not request a custody redetermination hearing due to 8 C.F.R. § 1003.19(h)(2)(i)(B) is misplaced. 8 C.F.R. § 1003.19(h)(2)(ii) specifically states that "[n]othing in this paragraph shall be construed as prohibiting an alien from seeking a redetermination of custody conditions by the Service in accordance with part 1235 or 1236 of this chapter." Relevant here, noncitizens arrested and detained under Section 1226 have a right to request a custody redetermination (i.e. a bond hearing) before an Immigration Judge ("IJ"). *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). The IJ evaluates whether there is a risk of nonappearance or danger to the community. *Matter of Guerra*, 24 I&N Dec. 37, 40 (BIA 2006). Uulu's Petition asserts that he is entitled to a bond hearing under Section 1226. Nothing in the INA's implementing regulations bars this request.

**B. Uulu is detained under Section 1226(a), not Section 1225(b)(2)**

There is no dispute that Uulu was released into the United States "on April 3, 2023, on interim parole with a $10,000.00 bond and Alternative to Detention requirement" and that he has resided in the United States since that time. [DE 9 at 77]. This Court has previously considered whether noncitizens present in the country whose parole has been revoked or terminated are subject to mandatory detention and found that § 1226(a), and not § 1225, applies to noncitizens such as Uulu, who have been paroled into the United States and are no longer "seeking admission" within meaning of 8 U.S.C. § 1225(b)(2). *See, e.g., Elumene Ambroise Fleuristil, Petitioner, v. Jason Woosley, et al.,* No. 4:26-CV-568-RGJ, 2026 WL 3320274, at *4 (W.D. Ky. Nov. 3, 2026); *Raul*

*Yudiel Castellanos Guerra, Petitioner, v. Markwayne Mullin, et al.*, No. 4:26-CV-430-RGJ, 2026 WL 3027146, at *5 (W.D. Ky. Oct. 8, 2026).

This Court's decision is guided by the Sixth Circuit's reasoning in *Lopez-Campos v. Raycraft*, where the Sixth Circuit held that mandatory detention of certain noncitizens "already present in the United States" who were not "seeking admission" was unlawful, and that the petitioners were properly detained, if at all, pursuant to § 1226(a). *Lopez-Campos v. Raycraft*, 175 F.4th 713, 732 (6th Circuit 2026) (explaining "§ 1226 applies to aliens already present in the United States" and "creates a default rule for those aliens . . . ."). Although the petitioners in *Lopez-Campos* were all noncitizens who had entered without inspection, they were, like Uulu, deemed "applicants for admission" under Section 1225. *See* 8 U.S.C. § 1225(a)(1) (defining an "applicant for admission" to the United States as "[a]n alien present in the United States who has not been admitted or who arrives in the United States.").

Indeed, the plain language of the parole statute suggests that Uulu is on equal footing with the petitioners in *Lopez-Campos*. The parole statute provides that, upon termination of parole, a petitioner's "case shall continue to be dealt with *in the same manner as that of any other applicant for admission* to the United States." 8 U.S.C. § 1182(d)(5)(A) (emphasis added). And the process for detaining other applicants for admission within the United States is clear: "Section 1226 generally governs the process of arresting and detaining aliens once inside the United States." *Chavez v. Dir. of Detroit Field Off.*, No. 4:25-cv-02061-SL, 2025 WL 2959617, at *4 (N.D. Ohio Oct. 20, 2025) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018)). *See Lopez-Campos*, 175 F.4th at 722 ("Put differently, § 1225(b)(2)'s mandatory detention scheme applies to certain noncitizens who seek admission into the country, whereas § 1226's permissive detention scheme applies to all other noncitizens pending a decision on their removability, with exceptions.").

Here, when Respondents detained Uulu on February 3, 2026, they do not contend that he was subjected to inspection and authorization by an immigration officer. And it would not make sense for that to have occurred because it already happened nearly three years prior, when he presented himself at the port of entry and was later paroled into the United States in April 2023. Uulu was placed into removal proceedings prior to his release on parole. From there, Uulu sought relief from that removal (namely, his pending asylum case), which is subject to the review of an immigration judge—not an immigration officer. For this reason, Section 1225(b)(2) is inapplicable. *See Lopez-Campos*, 175 F.4th at 729 (But for noncitizens like Petitioners who are within the interior, these claims for relief are typically presented before and resolved by an immigration judge, who is expressly not an immigration officer . . . . Section 1225(b)(2)(A) would not apply to noncitizens in this alternative scenario.").

In sum, the fact that Uulu has been present in the United States for nearly three years after being paroled into the United States demonstrates that he, just like petitioners in *Lopez-Campos*, is not "seeking admission." 8 U.S.C. § 1225(b)(2). *See* 175 F.4th at 723 ("[F]or a noncitizen to be 'seeking admission' under § 1225(b)(2)(A), the noncitizen must actively be in search of lawful entry into the United States via inspection and authorization by an immigration officer."); *Quero v. Woosley*, No. 4:26-CV-267-RGJ, 2026 WL 1147411, at *2 (W.D. Ky. Apr. 28, 2026) ("[The petitioner], who has been present in the United States for approximately three years, after being paroled into the country is not 'seeking admission,' into the United States. . . . Section 1226, not Section 1225 applies to his detention.").

Accordingly, the Court concludes that § 1226(a), and not § 1225(b)(2), applies to Uulu.

**B. Due Process**

Having determined that Uulu's detention is governed by § 1226(a), Respondents' arguments as to the due process required by § 1225(b)(2) are futile. [*See* DE 12 at 113 ("Congress mandated detention of arriving aliens . . . during removal proceedings under 8 U.S.C. § 1225(b) . . . . Petitioner is not owed any more process than what has been provided."]. Like the petitioners in *Lopez-Campos*, Uulu has "a liberty interest to be free from detention." *Lopez-Campos*, 175 F.4th at 734. Deprivation of that interest "without bond under § 1226(a) [is] a deprivation of liberty that violates [his] due process rights" and makes his continued detention unlawful. *Id.*

**C. Remedy**

The proper remedy for unlawful executive detention is generally release. *See Orellana v. Noem*, 807 F. Supp. 3d 745, 754 (W.D. Ky. 2025) ("[C]ourts across the country have ordered the release of individuals stemming from ICE's illegal detention."); *Minarcaja Concha v. Lyons*, 818 F. Supp. 3d 367, 390 (E.D.N.Y. 2026) ("Release from detention is the typical remedy for unlawful executive detention.") (cleaned up); *Roble v. Bondi*, 803 F. Supp. 3d 766, 774 (D. Minn. 2025) (ordering petitioner's "release from custody as a remedy for ICE's illegal re-detention"). *See also Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020) ("Habeas has traditionally been a means to secure release from unlawful detention.").

Release is not the only remedy, however. Historically, "common-law habeas corpus was, above all, an adaptable remedy," whose "precise application and scope changed depending upon the circumstances." *Boumediene v. Bush*, 553 U.S. 723, 779 (2008). The writ's "most extensive" role at common law was "in cases of pretrial and noncriminal detention, where there had been little or no previous judicial review of the cause for detention." *Id.* at 780. In *Boumediene*, the Supreme Court made clear that, "when the judicial power to issue habeas corpus properly is invoked the

judicial officer must have adequate authority . . . to formulate and issue appropriate orders for relief, including, if necessary, an order directing the prisoner's release." *Id.* at 787.

The Court concludes that release is necessary because Uulu is currently being held in mandatory detention and has been for over nine months. As such, Uulu's continued detention, however transitory, is unlawful. Accordingly, the Court will order Uulu's release. This is in line with the remedies fashioned by other district courts in this circuit. *See*, *e.g.*, *Salinas v. Woosley*, No. 4:25-CV-121-DJH, 2025 WL 3243837, at *5 (W.D. Ky. Nov. 20, 2025) (ordering release and requiring a bond hearing before further re-detention); *Monge-Nunez v. Ladwig*, No. 2:25-CV-03043-TLP-ATC, 2025 WL 3565348, at *7 (W.D. Tenn. Dec. 12, 2025) (ordering release pending a bond hearing). Moreover, "[i]n recent months, courts across the country have ordered the release of detainees in similar situations" where the government has articulated no legitimate interest in detaining individuals who are neither flight risks nor dangers to the community. *Moctezuma v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (ordering immediate release and collecting cases across jurisdictions); *Cruz-Reyes v. Bondi*, 5:26-CV-60, 2026 WL 332315, at *13 (S.D. Tex. Feb. 3, 2026) ("[D]ue process concerns weigh heavily in favor of granting immediate release."); *Santiago v. Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13–14 (W.D. Tex. Oct. 2, 2025) (collecting cases and finding that "immediate release appropriately remedies Respondents' violation of [Petitioner's] due process rights through his continued detention.").

However, the Court will not require Respondents to hold a bond hearing following Uulu's release. *But cf. Monge-Nunez*, 2025 WL 3565348, at *7. Nevertheless, should Respondents decide to re-detain Uulu, absent a material change in circumstances, they must provide him with a bond hearing pursuant to Section 1226(a).

## III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** the Petition for Writ of Habeas Corpus [DE 1] and **ORDERS** the following:

(1) Respondents are directed to release Petitioner immediately because of the unlawful detention in violation of his due process rights; and

(2) the United States must certify compliance with the Court's order by a filing on the docket **by November 9, 2026**.

Rebecca Grady Jennings, District Judge
United States District Court

November 6, 2026